**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **CHARLES OLAWOLE** *et al.*, | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:17-cv-408** |
| | ) | |
| **ACTIONET, INC.,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

At issue in this this removed and transferred breach-of-contract and employment discrimination case is defendant's motion to dismiss the Amended Complaint ("AC") pursuant to Rule 12(b)(6), Fed. R. Civ. P. The AC alleges three Counts: (1) Breach of contract (on behalf of one plaintiff), (2) National origin discrimination, in violation of Montgomery Cnty. Code § 27-19(a)(1) (on behalf of both plaintiffs) and (3) Race discrimination, in violation of 42 U.S.C. § 1981 (on behalf of both plaintiffs). For the reasons that follow, the motion to dismiss must be granted in part and denied in part.

## I.[1]

Plaintiffs are (1) Charles Olawole ("Olawole"), a Maryland resident and network engineer of Nigerian national origin, and (2) his closely-held family corporation, Graffiti Consulting, Inc. ("Graffiti Consulting"), an IT[2] consulting company incorporated and headquartered in Maryland. Defendant is ActioNet, Inc. ("ActioNet"), an IT security and

---

[1] The facts recited here are derived from the AC's allegations and are accepted as true solely for the purpose of resolving the motion to dismiss. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] "IT" stands for "information technology."

software development company that previously employed Olawole. Although both plaintiffs were formerly represented by counsel, they are currently proceeding *pro se* because their counsel withdrew on the ground that he is not licensed to practice in Virginia or in this district.

The AC alleges that on January 6, 2014, ActioNet hired Olawole as an at-will employee and Senior Network Engineer to work in Silver Spring, Maryland on ActioNet's contract with the National Weather Service. AC ¶ 4-6. Olawole's offer letter fixed his salary at $127,500 per year. *Id.* ¶ 6. The AC further alleges that his supervisor, William Hall, frequently praised Olawole's work. *Id.* ¶ 7. Yet, the AC also alleges that despite this praise, and although Olawole speaks English fluently, Hall mocked Olawole's noticeable foreign accent. *Id.* ¶ 8.

In the Spring of 2014, ActioNet and Graffiti Consulting agreed on a new contract, the "Consultant Agreement," which gave Olawole a $40,000 raise and contemplated (1) that both companies would jointly employ Olawole and (2) that ActioNet could terminate Olawole's employment, without cause, provided that ActioNet gave Olawole 10 days' written notice. *Id.* ¶¶ 10, 12 & 13. Importantly, the Consultant Agreement included a choice-of-law provision designating Virginia as the source of law governing the contract, and an exclusive forum-selection clause identifying state and federal courts in Virginia. *See* Consultant Agreement (Doc. 11-2) ¶¶ 18-19.[3] The Consultant Agreement further provided that ActioNet could terminate its contract with Graffiti Consulting *without* notice, but only "for cause or for the

---

[3] The Consultant Agreement is in the record and was the subject of a motion to transfer pursuant to 28 U.S.C. § 1404(a). Thus, although the Consultant Agreement is not attached to the AC, it is appropriate to consider that document because the AC relies on the Consultant Agreement's terms and there is no dispute regarding the document's authenticity. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (holding that a document may be considered on a motion to dismiss if, among other things, "the document was integral to the complaint and there is no dispute about the document's authenticity"); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (noting that a document is "integral" to the complaint if the complaint "relied on" it).

convenience of the government[.]" AC ¶ 14. According to the AC, ActioNet dictated the terms and conditions of Olawole's employment and job duties, supervised Olawole, had authority to hire and fire him, provided the tools and equipment for Olawole's employment, and "maintained exclusivity of [his] employment." *Id.* ¶ 10.

According to the AC, on May 9, 2014—just one week after the parties signed the Consultant Agreement—ActioNet terminated the contract without just cause or prior notice. *Id.* ¶¶ 14, 21. The AC alleges that AcioNet instead provided a pretextual ground for termination, namely that Olawole had failed to "take ownership of projects and to work independently with minimal supervision." *Id.* ¶ 20 (quotation marks omitted). That same day, May 9, 2014, Olawole's supervisor, Mr. Hall, informed Olawole that Olawole had been fired, demanded Olawole's badge and laptop, and escorted him out of the building in view of several coworkers. *Id.* ¶ 15.

Thereafter, on May 5, 2015, Olawole filed a charge with the Montgomery County Office of Human Rights, alleging that ActioNet had discriminated against him on the basis of national origin, in violation of the Montgomery County Human Rights Act. *See id.* ¶ 16; *see also* Montgomery Cnty. Code § 27-19(a)(1) (prohibiting employers from discriminating "because of … ancestry [or] national origin"). A little more than a year later, on June 23, 2016, the Montgomery County Office of Human Rights issued a letter notifying Olawole that the county agency had terminated administrative proceedings. AC ¶ 17. Four days later, on June 27, 2016, plaintiffs filed suit in Maryland state court. Subsequently, on March 24, 2017, plaintiffs were granted leave to file the AC.

The AC alleges the following Counts:

(1) Breach of contract (on behalf of Graffiti Consulting), for terminating the Consulting Agreement without cause and without providing 10-days' notice, *id.* ¶¶ 20-22;

(2) National origin discrimination, in violation of Montgomery Cnty. Code § 27-19(a)(1) (on behalf of both plaintiffs), *id.* ¶¶ 24-26; and

(3) Race discrimination, in violation of 42 U.S.C. § 1981 (on behalf of both plaintiffs), *id.* ¶¶ 28-30.

Graffiti Consulting is a plaintiff on all three Counts, while Olawole is a plaintiff only on Counts II and III. The AC seeks compensatory and punitive damages, back pay owing to Olawole, and Olawole's reinstatement to a previous or a substantially equivalent position.

ActioNet successfully removed the action from state court to the United States District Court for the District of Maryland. Thereafter, the District of Maryland granted a motion to transfer pursuant to 28 U.S.C. § 1404(a) and a forum selection clause. *See Olawole v. ActioNet, Inc.*, No. 1:17-cv-408 (D. Md. Apr. 4, 2017). After the matter was transferred from the District of Maryland to the Eastern District of Virginia, counsel for plaintiffs withdrew, noting that he is licensed to practice only in Maryland, and that he is not admitted to practice in this district.[4] In response, Olawole represented that he will proceed *pro se*.[5] Thus, on June 5, 2017, an Order issued, warning Olawole that Graffiti Consulting's claims would be dismissed if the corporation did not obtain counsel by the June 16, 2017 hearing on the motion to dismiss. Despite that Order, Graffiti Consulting remains unrepresented.

Now, ActioNet has moved to dismiss with prejudice each Count, arguing:

(1) that Graffiti Consulting's claims must be dismissed because the corporation lacks counsel and permitted its corporate charter to lapse,

---

[4] It does not appear that plaintiffs' counsel made any attempt to appear *pro hac vice* or to retain local counsel. *See* Rule 83.1(D), E.D. Va. Local Civ. R.

[5] Olawole has been urged repeatedly to retain new counsel.

(2) that both plaintiffs' claims for breach of contract (Count I) and national origin discrimination (Count II) are time-barred under Maryland law, and

(3) that the AC lacks sufficient factual allegations to state a § 1981 claim.

Each argument is separately addressed below.

## II.

To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). And although courts must "construe allegations in a pro se complaint liberally, a complaint must still contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (quotation marks omitted). In this respect, the factual allegations must be more than mere speculation, and must amount to more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Neither a formulaic recitation of the elements of a cause of action nor unadorned conclusory allegations are sufficient to survive a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678-79. Instead, the complaint must allege facts sufficient to "nudge claims across the line from conceivable to plausible." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255-56 (4th Cir. 2009) (quotation marks omitted).

## III.

To begin with, all three of Graffiti Consulting's claims are nonstarters because (1) the company does not have counsel and (2) the company filed this action while it had a legally inoperative corporate charter.

First, to permit Graffiti Consulting to appear *pro se* in this action would violate the centuries-old rule "that a corporation may appear in the federal courts only through licensed

counsel." *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council,* 506 U.S. 194, 202 (1993). Indeed, a company's failure to comply with this rule despite fair warning constitutes grounds to dismiss that company's case. *See, e.g.*, *Barr v. Prince George's Cnty., Md.*, 115 F. App'x 609, 610 (4th Cir. 2004) (dismissing a corporation's appeal for failure to obtain counsel despite the court's admonition). Nor is there any doubt plaintiffs received such a warning; on June 5, 2017, an Order issued, notifying plaintiffs that Graffiti Consulting "may not pursue any claims unless the corporation is represented by a duly licensed attorney," and that "failure to obtain counsel for Graffiti Consulting … by the June 16, 2017 hearing in this matter will result in the dismissal of the corporation's claims." *Olawole*, No.1:17-cv-408 (E.D. Va. June 5, 2017) (Order). Because Olawole and Graffiti Consulting received fair and adequate warning, and because Graffiti Consulting is still unrepresented, the company's claims must dismissed on this ground without prejudice.

Second, because Graffiti Consulting filed this action while its corporate charter was invalid,[6] its claims in the complaint and AC are null and void under Maryland law.[7] Indeed, without a valid charter, a corporation loses standing to sue. *Cf.* Md. Code, Corps. & Ass'ns § 2-103(b) (providing the right to sue); *id.* § 3-503(d) (providing that failure to maintain

_____

[6] It is appropriate to take judicial notice of this fact, which is memorialized in a public record available from Maryland's registry of corporations. *See* Rule 201, Fed. R. Evid. (governing judicial notice); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) (holding that courts may consider "matters of which a court may take judicial notice" when evaluating a Rule 12(b)(6) motion to dismiss); *Hanks v. Wavy Broad., LLC*, No. 2:11CV439, 2012 WL 405065, at *4 (E.D. Va. Feb. 8, 2012) ("Information that is readily accessible through the State Corporation Commission's website is a matter of public record, of which the Court may take judicial notice." (collecting cases)).

[7] Maryland law applies to the question whether Graffiti Consulting may sue because the AC alleges that the company is a Maryland corporation. *See* AC ¶ 4; Rule 17(b)(2), Fed. R. Civ. P. (providing that the capacity for a corporation to sue "is determined … by the law under which [the corporation] was organized").

an appropriate charter renders "the powers conferred by law on the corporation[] inoperative, null, and void"). Put differently, a corporation that permits its charter to lapse "is a legal non-entity" and "all powers granted to [the corporation] by law, including the power to sue or be sued, [a]re extinguished generally as of and during the forfeiture period." *Dual v. Lockheed Martin Corp.*, 383 Md. 151, 162-63 (2004). Thus, "[A]n act by a corporation while its charter is forfeited is null and void"; for example, if a company "file[s] suit when its charter [i]s forfeited … the complaint is null and void." *Tri-Cnty. Unlimited, Inc. v. Kids First Swim Sch. Inc.*, 191 Md. App. 613, 624 (2010); *see also Auto USA, Inc. v. DHL Express (USA), Inc.*, No. ELH-16-3580, 2017 WL 839525, at *5 (D. Md. Mar. 3, 2017) (relying on *Tri-Cnty. Unlimited* to dismiss a corporation's complaint "because, when [the corporation] filed the Complaint, its corporate charter had been forfeited [and] the Complaint was a legal nullity").

The same result obtains even where, as here, the corporation renews its charter after filing the complaint.[8] Maryland courts are clear that even though "a corporation's right to sue is restored upon revival of its charter," the company cannot "validate a lawsuit that it initiated when its charter was forfeited … by reviving its charter[.]" *A Guy Named Moe, LLC v. Chipotle Mex. Grill of Colo., LLC*, 223 Md. App. 240, 252 (2015) (quoting *Tri-Cnty. Unlimited*, 191 Md. App. at 621). Maryland law instead instructs such corporations to refile their claims. *Tri-Cnty. Unlimited*, 191 Md. App. at 621. To be sure, this approach may put form over substance because with its renewed charter, Graffiti Consulting, through duly-licensed counsel, would now be able to file a viable breach-of-contract claim. But the Federal Rules of Civil Procedure dictate

---

[8] In opposition to the motion to dismiss, Olawole filed an exhibit representing that Graffiti Consulting recently renewed its charter. Even assuming without deciding that this exhibit is properly considered at this stage, a renewed charter, as noted *infra*, does not rescue the company's claims in this action.

that Maryland law controls whether Graffiti Consulting has standing to sue, and Maryland law requires Graffiti Consulting to refile. *See* Rule 17(b)(2), Fed. R. Civ. P.

Accordingly, Graffiti Consulting's claims must be dismissed on these two grounds—its lack of counsel and its lapsed corporate charter—without prejudice.

## IV.

The non-prejudicial dismissal does not end the analysis, however, for Olawole has asserted claims and ActioNet argues that Counts I and II must be dismissed as time-barred.[9] Although the motion to dismiss invoked two Maryland statutes of limitations, the parties overlooked and did not address critical choice-of-law questions that must be answered here. Indeed, simply because the AC purports to allege counts pursuant to Maryland law does not necessarily mean that Maryland law supplies the governing limitations periods.

To be sure, it is apparent that state law, as opposed to federal law, provides the appropriate limitations periods for Counts I and II, as those counts assert state-law claims. This conclusion follows from the well-settled *Erie*[10] doctrine requiring federal courts to "apply state substantive law and federal procedural law when reviewing state-law claims." *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 74 (4th Cir. 2016). In this respect, a state's statute of limitations is "considered substantive law" pursuant to *Erie*; thus, if the state's "statute of limitations would bar recovery in a State court, a federal court ought not to afford recovery."

---

[9] Typically, a claim should not be dismissed at the Rule 12(b)(6) stage based on an affirmative defense, such as a statute of limitations. But where, as here, the facts necessary to support the defense appear on the face of the complaint, dismissal is appropriate. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc) ("[W]here facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6).").

[10] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

*Bonham v. Weinraub*, 413 F. App'x 615, 616 (4th Cir. 2011) (quoting *Guaranty Trust Co. v. York*, 326 U.S. 99, 110 (1945)).

But this conclusion—that state law, as opposed to federal law, supplies the limitations periods for Counts I and II—does not end the inquiry. Rather, it is necessary to determine *which* state supplies the relevant statutes of limitations. To do so, it is imperative to ascertain the appropriate choice-of-law rules. Next, the choice-of-law rules must be applied to identify the governing statutes of limitations. Analysis therefore turns to the following tasks: (1) identifying the governing choice-of-law rules, (2) determining which state's limitations period applies to Count I, and (3) determining which state's limitations period governs Count II.

## A.

The first analytical step is to identify the correct choice-of-law rules. Here, Virginia's rules apply because a federal court sitting in diversity applies the choice-of-law rules of the forum state. *See, e.g.*, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). This is so despite the fact that this case originated in Maryland and was transferred here pursuant to 28 U.S.C. § 1404(a). To be sure, the standard "*Van Dusen*" rule provides that a § 1404(a) transfer carries with it the transferor court's choice-of-law rules. *See Van Dusen v. Barrack*, 376 U.S. 612 (1964). But as Supreme Court precedent teaches, the *Van Dusen* rule does not apply where, as here, "a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum[.]" *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 134 S. Ct. 568, 582 (2013). Rather, in such a scenario, a "[Section] 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *Id.*[11] Virginia's choice-of-law rules therefore apply.

_____

[11] This is so because it would be "inequitable" and encourage "gamesmanship" to permit a plaintiff "to fasten its choice of substantive law to the venue transfer" when the parties had agreed to a forum-selection clause designating a different forum. *Atl. Marine*, 134 S. Ct. at 583.

Given this conclusion, analysis next turns to identifying the governing limitations periods. Importantly, Virginia's choice-of-law rules occasionally require the application of a *Virginia* statute of limitations to a cause of action arising under a *foreign* state's law. In this respect, Virginia's choice-of-law rules draw a distinction between "substantive' and "procedural" limitations periods. For instance, if Maryland's statute of limitations on a Maryland cause of action is "substantive," then Maryland's limitations period applies to that claim; but if Maryland's limitations period on a Maryland claim is "procedural," then Virginia's statute of limitations will generally govern that claim. *See Jones v. R.S. Jones & Assocs., Inc.*, 246 Va. 3 (1993).

The distinction between "substantive" and "procedural" limitations periods can be nebulous in some cases. Statutes of limitations often straddle the line between substance and procedure. In fact, Virginia's choice-of-law rules recognize three limitations statutes: (1) "statutes of repose," (2) "procedural" or "pure" statutes of limitations, and (3) "substantive" or "special" statutes of limitations. *See Commonwealth v. Owens-Corning Fiberglas, Corp.*, 238 Va. 595, 598-99 (1989). First, a "statute of repose" "run[s] from some legislatively selected point in time which is unrelated to the accrual of any cause of action" and "reflect[s] a legislative policy determination that a time should come beyond which a potential defendant will be immune from liability for his past acts and omissions." *Id.* Second, a "procedural" statute of limitations "merely … time-restrict[s] the assertion of a remedy" and "furnish[es] an affirmative defense [that is] waived if not pleaded." *Id.* at 598. Last, a "substantive" statute of limitations is "ordinarily contained in statutes [that] create a new right," and thus "become[s] [an] element[] of that newly-created right, restricting its availability." *Id.* at 599. Indeed, "Compliance with a … [substantive] statute is a condition precedent to maintenance of a claim." *Id.*

In other words, a statute of limitations is substantive under Virginia's choice-of-law rules if the statute "is directed so specifically to the right of action … as to warrant saying that the limitation qualifies the right." *Jones*, 246 Va. at 7 (holding that a statute of limitations on a wrongful death action was substantive for choice-of-law purposes). This is especially so if the legislature created a right of action that did not exist at common law. *See id.* at 5 ("Because no right of action for wrongful death existed at common law, statutes that created the right usually contained a 'built in' limitation prescribing the time within which the action must be brought."); *see also Overstreet v. Ky. Cent. Life Ins. Co.*, 950 F.2d 931, 935 (4th Cir. 1991) ("When the legislature creates a right of action that did not exist at common law, the limitations specified in the statute operate as a substantive limit on the right to recover." (citing *Dowell v. Cox*, 108 Va. 460 (1908)). Thus, the *Jones* court held that a Florida statute of limitations requiring that "[a]n action for wrongful death … be commenced … [w]ithin two years" was substantive because the limitations period was directed specifically to the right to bring a wrongful death action. *Jones*, 246 Va. at 7.

These principles, applied to the AC's state-law claims, point persuasively to the conclusion that the limitations period on Count I, the breach-of-contract claim, is procedural and thus governed by Virginia law. The limitations period for Count II, the state-law national origin discrimination claim, requires a different conclusion; it is substantive and thus governed by Maryland law. As explained below, the limitations period has not yet expired on the breach-of-contract claim, but the claim of national origin discrimination is time-barred. Thus, Count I must be dismissed without prejudice, whereas Count II must be dismissed with prejudice.

**B.**

Virginia law provides the limitations period on the breach-of-contract claim in Count I. Indeed, when a party sues for breach-of contract the "limitations period is treated as a procedural issue governed by Virginia law." *Hunter Innovations*, 753 F. Supp. 2d at 602 (citing *Hansen v. Stanley Martin Cos.*, 266 Va. 345 (2003); *Hospelhorn v. Corbin*, 179 Va. 348 (1942)). Virginia provides two statutes governing the limitations period for claims alleging breach of a written contract. The first, Va. Code § 8.01-246(2), provides a five-year window. The second, Va. Code § 8.01-247, is a "borrowing statute," which "limits actions on contracts governed by the law of another state to the limitations period of that state if its time limit is more restrictive than Virginia's." *Hansen*, 266 Va. at 352 (applying Maryland's shorter statute of limitations to a breach-of-contract claim).[12] Pursuant to the borrowing statute, "The law governing a contract is the law relating to the validity and interpretation of the contract itself, rather than the law regarding performance and breach." *Fiberlink Commc'ns Corp. v. Magarity*, 24 F. App'x 178, 2001 WL 1658914, at *3 (4th Cir. Oct. 16, 2001); *see also Hunter Innovations*, 753 F. Supp. 2d at 602 (same); *Johnson v. Brown*, 372 F. Supp. 2d 501, 508 (E.D. Va. 2005) (same). Thus, whether Virginia's five-year limitations period applies, or whether another jurisdiction's shorter period governs pursuant to the borrowing statute, turns on which law governs the contract.

Here, Virginia law governs the allegedly breached contract, the Consultant Agreement, because that contract includes a choice-of-law provision identifying Virginia as the source of governing law. *See* Consulting Agreement ¶ 18. Virginia's five-year period therefore controls. To be sure, the AC intimates that the parties executed the Consultant Agreement in Maryland,

_____

[12] The statute reads in full: "No action shall be maintained on any contract which is governed by the law of another state or country if the right of action thereon is barred either by the laws of such state or country or of this Commonwealth." Va. Code. § 8.01-247.

and Virginia's choice-of-law rules provide that "[g]enerally, the nature, validity, and interpretation of … contracts[] are governed by the law of the place where made." *Lexie v. State Farm Mut. Auto. Ins. Co.*, 251 Va. 390, 395 (1996). But Virginia law also provides that where, as here, "a contract specifies that the substantive law of another jurisdiction governs its interpretation or application, the parties' choice of substantive law should be applied." *Settlement Funding, LLC v. Von Neumann-Lillie*, 274 Va. 76, 81 (2007); *see also Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999) ("Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances.").[13] Because the Consultant Agreement at issue has a choice-of-law provision designating Virginia as the source of governing law, Virginia's borrowing statute is therefore inapplicable. Rather, Virginia's five-year limitation period governs.

Thus, ActioNet's argument that Count I is time-barred and must be dismissed with prejudice is incorrect. Rather, if Graffiti Consulting obtains counsel and files within five years of May 9, 2014—the date the contract was terminated and thus the date a breach-of-contract claim accrued—the claim would be timely.

## C.

By contrast, Maryland's statute of limitations governs Count II, plaintiffs' national origin discrimination claim pursuant to the Montgomery County Code. This is so because the limitations period on this claim is *substantive*, as it "is directed so specifically to the right of action … as to warrant saying that the limitation qualifies the right." *Jones*, 246 Va. at 7. In this regard, Maryland law provides that a person "subjected to a discriminatory act prohibited by the [Montgomery] county code may bring and maintain a civil action against the person that

---

[13] This might mean that Virginia law governs any breach-of-contract claims in this case. *See, e.g.*, *Settlement Funding*, 274 Va. at 81. But that issue need not be reached.

committed the alleged discriminatory act[.]" Md. Code, State Gov't § 20-1202(b). The very next section in that very statute includes a limitations period specific to the right of action: "An action under subsection (b) of this section *shall* be commenced … within 2 years after the occurrence of the alleged discriminatory act." *Id.* § 20-1202(c)(1) (emphasis added). Thus, like the Florida statute at issue in *Jones*, the limitations period on plaintiffs' state-law claim is directed so specifically to the cause of action—here, a discrimination claim under the Montgomery County Code—that the limitations period qualifies the right to sue and is therefore substantive. *See Jones*, 246 Va. at 7 (holding that the requirement that "[a]n action for wrongful death … be commenced … [w]ithin two years" was a substantive limitations period); *Owens-Corning Fiberglas*, 236 Va. at 598-99 (noting that a "substantive" statutes of limitations often appear "in statutes [that] create a new right and become elements of that newly-created right, restricting its availability). Accordingly, the two-year statute of limitations in § 20-1202(c)(1) applies to Count II.

Given the applicability of Maryland's two-year statute of limitations, Count II must be dismissed with prejudice as time-barred. Indeed, Maryland law provides that a claim pursuant to § 20-1202(b) must be filed within two years of "the alleged discriminatory act[.]" Md. Code, State Gov't § 20-1202(b). In this respect, the AC alleges that the discriminatory act occurred on May 9, 2014, which gave plaintiffs until May 9, 2016 to file their claim. Plaintiffs, however, did not file their complaint until June 27, 2016. Count II must be dismissed with prejudice as time-barred.

It is important to note that § 20-1202(b) does not include any tolling provisions that could rescue Count II. To be sure, § 20-1202 includes a partial exhaustion requirement, providing that a lawsuit alleging employment discrimination "may not be commenced sooner than 45 days after

the aggrieved person files a complaint with the county unit responsible for handling violations of the county discrimination laws." *Id.* § 20-1202(c)(2)(i). Conspicuously missing from the statute is (1) any provision that tolls the two-year limitations period while the administrative process unfolds, or (2) any requirement that the plaintiff wait for an administrative decision. Thus, as the District of Maryland has routinely held, failure to adhere to the state code's two-year limitations period bars relief—even if the two-year window closes while plaintiff awaits the results of a state or county administrative decision. *See, e.g.*, *Ward v. STG Int'l, Inc.*, No. PWG-14-4040, 2016 WL 3257823, at *6 n.5 (D. Md. June 14, 2016); *Westmoreland v. Prince George's Cnty.*, No. TDC-14-821, 2015 WL 996752, at *13 (D. Md. Mar. 4, 2015). Here, plaintiffs did not file this action within two years of "the occurrence of the alleged discriminatory act." Md. Code, State Gov't § 20-1202(c)(1).

Nor does the doctrine of equitable tolling apply. *See Ward*, 2016 WL 3257823, at *6 n.5 (holding in analogous circumstances that the plaintiff could not rely on equitable tolling to excuse a failure to comply with § 20-1202's two-year limitations period). Indeed, plaintiffs are "entitled to equitable tolling" only if they show "(l) that [they] ha[ve] been pursuing [their] rights diligently, and (2) that some extraordinary circumstance stood in [their] way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quotation marks omitted). Plaintiffs fail to show any extraordinary circumstances that prevented them from timely filing. Rather, the only apparent reason they failed to file a timely complaint is their prior lawyer's negligence or misunderstanding regarding the statute of limitations.[14] But it is well-settled that mere negligence

_____

[14] The AC alleges that "[d]uring the pendency of administrative proceedings, the running of the one year [sic] statute of limitations was tolled." AC ¶ 18. This is doubly wrong. First, the limitations period is two years, not one. *See* Md. Code. § 20-1202(c)(1) ("An action … shall be commenced … within *2 years* after the occurrence of the alleged discriminatory act." (emphasis added)). Second, as detailed above, the statute does not include a tolling provision. In this regard,

or misunderstanding is not an "extraordinary circumstance" sufficient to warrant equitable tolling. *See id.* at 651-652 ("[A] simple miscalculation that leads a lawyer to miss a filing deadline does … does not warrant equitable tolling" (quotation marks and citation omitted)); *see also Rouse v. Lee*, 339 F.3d 238, 248 (4th Cir. 2003) ("[A] mistake by a party's counsel in interpreting a statute of limitations does not present the extraordinary circumstance beyond the party's control where equity should step in to give the party the benefit of his erroneous understanding." (quoting *Harris v. Hutchinson*, 209 F.3d 325, 331 (4th Cir. 2000)). Thus, Count II is time-barred.

In sum, Count I must be dismissed without prejudice, and Count II must be dismissed with prejudice because the limitations period has expired.

## V.

ActioNet's last argument is that Count III, which alleges a wrongful termination of contract in violation of 42 U.S.C. § 1981, must be dismissed with prejudice for failure to state a claim.[15] For the reasons stated above, Graffiti Consulting's failures to obtain counsel or to file

---

the Maryland statute differs from Title VII, which requires a complainant to wait for a "right to sue" letter from the proper administrative agency before pursuing his or her claims in federal court. *See* 42 U.S.C. § 2000e-5(f)(1).

[15] Although the parties did not address the applicable statute of limitations on plaintiffs' § 1981 claim, it is worth noting that 28 U.S.C. § 1658, which applies a four-year residual statute of limitations, applies to that claim. Granted, courts evaluating claims under § 1981—a statute guaranteeing to "[a]ll persons within the jurisdiction of the United States … the same right … to make and enforce contracts … as is enjoyed by white citizens"— typically "borrow the statute of limitations … applicable to the state cause of action that is most analogous" to a § 1981 claim. *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 320 (4th Cir. 2006). But in 1990 Congress enacted 28 U.S.C. § 1658, a "general, 4-year limitations period for any federal statute subsequently enacted without one of its own." *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 34 n. * (1995). A year later, in 1991, Congress amended § 1981 to provide additional protections to the right to make and enforce contracts, including protection from the wrongful *termination* of contracts. *See Jones v. R.R Donnelley & Sons Co.*, 541 U.S. 369, 382-83 (2004). And where, as here, a plaintiff relies on § 1981 to allege wrongful termination of a contract, that claim "ar[ises]

this claim with a valid corporate charter are sufficient grounds to dismiss the corporation's § 1981 claim without prejudice. So, too, must Olawole's § 1981 count be dismissed without prejudice, albeit for a different reason: he fails to state a plausible claim.

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State … to make and enforce contracts … as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a). The statute also guarantees equal treatment in "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). To prevail on a § 1981 claim of race discrimination, Olawole must ultimately prove (1) that ActioNet "intended to discriminate" on the basis of his race and (2) "that the discrimination interfered with a contractual interest." *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006). Notably, however, § 1981 does not recognize a claim for national origin discrimination. *St. Francis Coll.  v. Al-Khazraji*, 481 U.S. 604, 606 (1987) (holding that § 1981 "d[oes] not cover" claims of "discrimination on the basis of national origin").

Here, Olawole's § 1981 claim must be dismissed with leave to amend because the AC's allegations relate to national origin discrimination, not race discrimination. The only mention of race is a conclusory allegation that the conduct giving rise to Counts I (breach of contract) and Count II (national origin discrimination) also constitute "a violation of § 1981's ban on race discrimination." AC ¶ 30. And although courts have struggled to discern the indistinct line between national origin and race for purposes of § 1981 claims,[16] this conceptual distinction is largely academic in this case because Olawole will be afforded leave to amend.[17]

---

under the [1991] amendment to § 1981" and thus falls under the federal four-year statute of limitations. *Id.* at 383. Accordingly, the § 1981 claim is not time-barred.

[16] *Compare Guzman v. Concavage Marine Constr. Inc.*, 176 F. Supp. 3d 330, 335 (S.D.N.Y. 2016) (denying a motion to dismiss a § 1981 claim because it "ma[d]e intuitive sense to think

# VI.

In sum, the motion to dismiss must be granted in part and denied in part. Specifically, the motion will be granted insofar as (1) Count I, brought by Graffiti Consulting, must be dismissed without prejudice for failure to appear through counsel and as legally inoperative; (2) Count II, brought by both plaintiffs, must be dismissed with prejudice as time-barred; and (3) Count III must be dismissed without prejudice as to Graffiti Consulting for failure to appear through counsel and as legally inoperative, and dismissed with leave to amend as to Olawole. The motion to dismiss must be denied in all other respects.[18]

---

that [a defendant] meant to use 'Mexican' and "Spanish" in their racial sense, … rather than their geographic sense, when he used those terms disparagingly to a Hispanic employee …."), *and Ihekwu v. City of Durham, N.C.*, 129 F. Supp. 2d 870, 887 (M.D.N.C. 2000) (denying summary judgment because of a factual dispute whether a Nigerian-born plaintiff had been discriminated against on the basis of race where most of the allegations related to the plaintiff's national origin), *with Quraishi v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, No. CIV. CCB-13-10, 2013 WL 2370449, at *2 (D. Md. May 30, 2013) (dismissing a § 1981 claim because the allegations suggested that the plaintiff's origin, not her "ethnicity," motivated the defendant's adverse action), *Akinjide v. Univ. of Md. E. Shore*, No. DKC 09-2595, 2011 WL 4899999, at *9 (D. Md. Oct. 13, 2011) (granting defendant summary judgment on a § 1981 claim because the complaint "never reference[d] any ethnic characteristics associated with [the plaintiff's national] origin"), *and Perkins v. Kaiser Found. Health Plan of Mid–Atl. States, Inc.*, No. DKC–08–3340, 2010 WL 889673, at *5 (D. Md. Mar. 5, 2010) (dismissing a § 1981 claim of "national origin" discrimination devoid of "any allegations of racial discrimination as a ground for relief").

[17] ActioNet asserts, without citation to any authority, that Olawole's § 1981 claim should be dismissed with prejudice for failure to state a claim. But Rule 15(a)(2), Fed. R. Civ. P. provides that leave to file an amended pleading should be "freely give[n] … when justice so requires." And ActioNet has not indicated that amendment would be unjust or futile. *See GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) ("Leave to amend may properly be denied where amendment would be futile.").

[18] In addition to filing a motion to dismiss, ActioNet claims to have "prospectively move[d]" for attorneys' fees. Prospective or not, that motion currently lacks any arguments to support it. Rather, ActioNet purports to "reserve[] the right to file a formal motion and memorandum in support" of its fee request. *See* Doc. 46 at 9. Filing a formal motion and memorandum is the proper—indeed, required—course of action. *See, e.g.*, Rule 7(A), E.D. Va. Local Civ. R. ("All motions shall state with particularity the grounds therefor and shall set forth the relief or order sought.").

An appropriate Order will issue.

Alexandria, Virginia
June 20, 2017

/s/

T. S. Ellis, III
United States District Judge